This is Andy Hsu on behalf of the petitioner Premjit Singh. The case before the court today is summarily affirmed by the BIA and therefore the IJ's decision is the final agency determination on appeal. The issue before the court today is whether there is substantial evidence to prove that Mr. Singh is based on minor inconsistencies in dates, speculation, and whether there was no consideration for Mr. Singh's reasonable explanations. First, the immigration judge found that there were inconsistencies in Mr. Singh's testimony regarding who he voted for in 1989. Your Honor, as I acknowledge, Mr. Singh stated several different names when he was asked who the candidates were in 1989. However, he did offer an explanation as to why he did not know exactly or precisely who he voted for or who was running for office during those elections. If Your Honor could turn to page 150 of the administrative record, beginning line 23, the government counsel asked, but you're sure you voted for A.G. Singh Baines? Mr. Singh replied, the petitioner Mr. Singh replied, yes. Government counsel then asked, why are you sure of that? Mr. Singh replied, I, this is a direct quote, I, when I saw his voting symbol and I voted for that. The government further questioned, you remember it specifically? And Mr. Singh answered, I don't remember everything, but whatever his symbol, his design was, I voted for that. Please realize, Your Honor, Mr. Singh is not highly educated. He states that he failed high school, he dropped out of high school after he failed the 10th grade. He did expressly recall who the candidates were. The record shows that he was voting for the political symbol, the symbol for his party. He's voting along political lines as a member of the Akali Dalai Lama political party. And I.G. did not address this explanation for why he did not, for his imperfect recollection of who the candidates were in 1989. What is the pertinence of who he voted for in 1989? Well, Mr. Singh's claim was based on political asylum that he was persecuted because of his political ties with the Akali Dalai Lama party. So the point is that this was the person who was running at that time? Correct, Your Honor. And this person wasn't running at all and wasn't in the right party. The person he says he voted for, Baines, wasn't a candidate then? Do we know that? At first he said he was a candidate during 1989. I'm asking you, though, what does the record show about what was, in fact, the case? He was not a candidate in 1989. I think Exhibit 22 showed that. This doesn't demonstrate that he voted for somebody who wasn't of the party that he said he belonged to. It just demonstrates that he's wrong about who was running in 1989. Correct, Your Honor. He identified the opposing, I believe it was the Congress party, as the party that won the election and who the candidate was, but he wasn't able to say for certain who his party was. He knows he voted for his party and his party lost, but he doesn't know who the candidate was in 1989. That's the sum of it. Correct, Your Honor. Next, the I.J. immigration judge found that the petitioner was inconsistent in another instance where he was explaining how and where he was informed of his uncle's death. The uncle's name was Jagar Singh. This inconsistency was based on the immigration judge's interpretation of the asylum officer's notes. If Your Honor, let's turn to page 236 of the administrative record. The immigration judge pointed out, or I believe the opposing counsel pointed out, that the notes indicate, and this is a direct quote, A, at home, W, forward slash, family, when he was informed that Jagar Singh, his uncle, was killed. The asylum officer did not testify as to the meaning of those notes, and even if he was there, he had in prior testimony testified that he didn't remember the interview and he was merely reading his notes. The judge's interpretation of those notes, she took them to mean that Mr. Singh was at home when he was informed that Jagar Singh, his uncle, was killed. However, this is, once again, this is speculation as to what that, what those notes mean. It could, the term commotion could just as easily mean, or be interpreted to refer to the actual killing of Jagar Singh, and that petitioner, Mr. Singh, did not find, you know, was at home when Jagar Singh was killed, but he did not find out this news until he went out into his fields. You know, that's, there's more than one interpretation for those notes. The notes are on page 236 of the administrative record, I think it's about halfway down. As, you know, as IJ, as IJ interpreted these notes, but once again, that's just speculation because we have no idea what they mean. And, you know, speculation, she can, you know, an adverse credibility determination cannot be based on a speculation of what the asylum officer's notes indicate when the asylum officer himself cannot testify as, or was not there to testify as to what they mean. If those notes are to be used against Mr. Singh, the asylum officer was there and should have been asked about whether he remembers specifically whether he, what he meant by those notes. Also, the IJ found that there were inconsistencies regarding Mr. Singh's, the reasons for Mr. Singh's third arrest. Mr. Singh, in neither, in his declaration, in neither his declaration nor his first individual hearing, mentioned the death of his uncle as a reason for his third arrest. And in the May 2001 hearing, Petitioner Mr. Singh did mention it in the context of his third arrest. The IJ found that this was inconsistent because he had not mentioned the death of Jagar Singh in his prior testimony. When asked why he did not mention the death of Jagar Singh as a reason, one of the reasons for his arrest the third time, Mr. Singh, the Petitioner, explained that he was stopped by the interpreter. This is, this is a, you know, this is a reasonable explanation. You'll see that on page 205 of the Administrative Record, line 23. Mr. Singh, he appears to indicate, he says something along the lines, I was stopped by the interpreter like this. The record doesn't indicate whether Mr. Singh made a gesture to indicate how he was stopped. However, the immigration judge did not consider this explanation, and she further confused the issue by asking Mr. Singh, the Petitioner, whether this occurred on cross examination, direct examination, and who was questioning him at the time. Mr. Singh had been testifying for many hours. The immigration judge did not consider that there were multiple attorneys present throughout his hearing, and that she herself was questioning the witness at the same time. The witness, Mr. Singh, is a layperson. He does not, he may not know, I'm not sure, he may not know what the meaning of cross examination, direct examination, what those words mean. The immigration judge persisted in questioning Mr. Singh about whether why he, who actually stopped him, if the interpreter stopped him, and he said, he finally gave up and said, what can I say? He just gave up. If we were to agree with you that the IJA's credibility determination is not supported by substantial evidence, what do you want us to do with it? What's your position on that? Do we send it back to the BIA? Do we go on and reach the eligibility? Ask that it be remanded back to the IJA for further determination as to whether consideration of his explanations as to his inconsistencies. And then they could give some specific or more cogent reasons as to why he's credible or not credible. Now we have to send it back to the IJA anyway so that the IJA and the AG can exercise their discretion as to assign him? Yes, Your Honor. Thank you. My time is up. Thank you, Your Honor. Good morning, Your Honors. It pleases the Court, Barry Pettinato appearing on behalf of the Attorney General, John Ashcroft. Substantial evidence supports the immigration judge's credibility finding in this case. The immigration judge gave specific and cogent reasons why she found Mr. Singh to be incredible. She may have given specific reasons. She identified specific instances of inconsistencies. But were they really serious? Well, if I can... You're talking about dates? You're talking about... Well, I'll take... I think they were significant because Mr. Singh... Why? Because Mr. Singh, let's just take, for example, the incident about who he claimed he voted for in the 89 parliamentary election. I was trying to figure out whether I knew who I voted for in 1988, for example. I can tell you probably what party, and I can tell you which, in general, which people I voted for in the last 20 years. But if you ask me who I voted for in 1988, I couldn't tell you. Your Honor, I bet you voted many times, though. Mr. Singh's testimony in front of the Court was he only voted twice, once in 80 and once in 89. So his recollection, I'm sure, would be much better because he only had these two elections. And the reason it's significant is because he claims to be an Akali Dal member, actively participating in the party, yet he... Not in 1989, actively participating. My understanding is that he was actively participating after that. Yeah, I think it started in December of 89 or something. It was late. It was... In other words, he doesn't claim to have been actively participating at the time of the vote, as opposed to just voting. Right. I think his real activity started... His membership, he joined the Akali Dal Man, I think, in December of 89. So I'm not sure when in 89 the election was. But it's significant because you would think that he would know who... If he truly was supporting the Akali Dal Man party, he would remember. And what's significant... Remember that he voted for the party. That's what he said. He voted for the symbol of the party. He doesn't quite remember who the candidate was. I know, but he had three opportunities to say that's what he did, voted for the party. That's what he's saying now. But he gave three different answers. In front of the asylum officer, he said he voted for K.S. Wadala. Then on direct examination, he said he voted for Ajit Singh Bains. And then on cross-examination, he said he voted for I.K. Goodrell. And he's... Either he's making this up or... And it doesn't inspire any confidence in his testimony. Why didn't he... If, in fact, he had just voted for the party, why didn't he just say, I'm not sure who I voted for, but I voted for the party? Well, if he... Every time he tried to say, I don't remember, I don't remember, the I.J. was pretty... Pretty... Very persistent in asking him, why don't you remember? Well, essentially, she was trying to get... Give him an opportunity... Oh, she wasn't going to accept that as an answer either. She wasn't going to accept what? Every time he said, I don't remember, or when he did say, I don't remember, I don't recall, it was a long time ago, she said, well, why not? Why don't you remember? Well, she... I mean, I would agree with you, Your Honor, in this transcript. She didn't give him much... She didn't give him much latitude. Well, it was a pretty protracted hearing, and I think she was... She was trying to get to the bottom of the... What his true claim was. As soon as he... As soon as he... There was any inconsistency in his testimony, boy, she was right on him. Well, Your Honor, she probably... She has a lot of these asylum claims, and I'm sure she... Her job, she assumes her job and her mission is to get to the truth. As a fact finder, what she's trying to do is ferret out the truth. And the immigration judges are authorized under the regulations to examine, cross-examine and interrogate aliens. If I had conducted cross-exam... If I had conducted examinations like that when I was a district court judge, I wouldn't have been too popular. Yeah, but that's not really the role of a district court judge. In fact, that is the role of the immigration judge. They're specifically authorized under the regulations by the Attorney General to do that. It's more of an inquisitory sort of thing, not strictly an adversarial type thing. I want to move on to a second inconsistency, and that's the reason why he voted... Was arrested in August of 1989. Initially, he said he was... It was because he was an Akali Dowell member and he was going to observe a black day. But then on cross-examination, he said he was arrested because the police wanted to question him about his uncle, Jagar Singh, who the police believe was a terrorist. Completely conflicting reasons as to why he was arrested. Could you give me the administrative court record citation to the first explanation, which was different from his uncle got killed? I can, Your Honor. In the administrative record at 131, that's where he says he was arrested because he was an Akali Dowell member. The administrative record at 201 is where he says he was arrested because they were interested in his uncle. And he was given an opportunity to explain, and he gave a completely  non-responsive answer at 203. And then when the immigration judge pressed him further as to this answer as completely non-responsive, he then tried to shift the blame and say, well, the reason I didn't mention my uncle's... They were interested in arresting me because of my uncle was because the interpreter interrupted me. And when the immigration judge pressed him on that, he backed off and says, I didn't really remember at the time what I said. And that's at 205.  I know you just said it a moment ago, but I've lost it. The second part. The second part, that is in the record at 201, where he says it was because of his uncle. And it's good. This is an important, goes to the heart of his claim, because obviously the motivation as to why the police were interested in arresting him is critical to his asylum claim, and yet he gave conflicting answers as to why the police were interested in him. Regarding the 1992 election, the judge also relied on the fact that he testified. Now, this is when he was politically involved with the Akali Dalman. He testified that I.K. Gujral won that election. In fact, due to the efforts of the Akali Dalman, that's in the record at 134. But then he shifted his testimony and he said, no, that's B.N. Singh from the Congress Party won that election. And in fact, the Akali Dalman was not involved in supporting any candidates. So first he says the Akali Dalman candidate won, and we supported him. And then he shifted and said, no, no, no, he changed his testimony altogether. And then on cross-examination, he gives a different winner as to who won the election. Administrative record at 170. So he's completely inconsistent as to who won the election. The point of this kind of an inquiry, as to the fact that he's not a recipient witness, is just to see if he's on the assumption that he should be aware of, if he's politically active in this party, he ought to know, care enough to know what was happening. Is that it? Exactly, Your Honor. I mean... Because obviously the actual facts can be checked very easily. We're not trying to find out what the fact is. We're trying to find out whether he knows the facts. Exactly, Your Honor. I mean, one would expect if you're politically involved and you're supporting candidates and you're behind the party, you're going to have some knowledge of exactly who the candidates are and who won. There were other inconsistencies. Counsel talked about one that the judge relied on. That's the inconsistency between what he said in front of the asylum officer about learning about the death of his uncle, whether he was at home or whether he was in a different place. The only thing that's really significant about that event is that it goes to his credibility as to exactly where he was at this significant period of time. He's politically active. The police thought he was a militant. And his uncle plays a role throughout his asylum claim. So at the time of the death of his uncle, one would expect that he would have known exactly where he was at the time of the uncle's death. There's other evidence in the record that all supports the immigration judge's finding. The inconsistency between the testimony of the asylum officer. There was conflicting dates as to when he deported his village, whether it was in March of 1996 or when he fled his village in May of 1996. He provided no explanation for that inconsistency. And it's important because it determines when he fled his village. Supposedly he was fleeing persecution or whatever. One would think he would know exactly when he fled. He gave the asylum officer conflicting dates about his arrest. He told that one of his arrests happened on August 10th of 1995. And then he told the immigration judge that arrest happened on August 15th. When you read the record, I think the immigration judge, you can see she's spoken a lot of general terms in her decision in terms of her exasperation in describing his testimony as being equivocal, unconvincing, contradictory, appearing to be fabricated, nonresponsive, vague. I think that the immigration judge was pretty frustrated with the specificity of his testimony and the consistency of it. And I think that's presented at the beginning part of her decision where she represents these general reasons for being frustrated. But then in the end of her decision, she gives specific reasons as to why she found him to be incredible. If we were to disagree with the BIA's adverse credibility determination, what's the government's position about what we should then do? I think the court should send it back to the board, which would send it back to an immigration judge and determine whether he in fact if his testimony is credible, if he in fact has turned has made a claim for asylum or if this past persecution there, whether the government can rebut the presumption of a well-founded fear. There's a lot of other issues that the Attorney General hasn't had an opportunity to look at and should do that in the first instance. So a remand would be appropriate. Thank you. Thank you, counsel. You had about eight seconds. Did you have any rebuttal? I think eight seconds, Your Honor. I'd just like to point out that even though the I.J. had other reasons, general reasons as to why she didn't believe Mr. Singh's testimony, in the general reason she never gave specific instances why what was contradictory or where she said she observed his demeanor, she didn't point out what her observations were. And therefore, she cannot give any rebuttal. She cannot base her adverse determination, credibility determination on those generalized findings. That's all I have, Your Honor. Thank you. This case is submitted and we'll take up the next case on the calendar, Cower v. Ashcroft, 0371951.
judges: Paez, Berzon, Bea